UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EXAVIER McCASTER,           )<br>                             )<br>           Petitioner    )<br>                             )<br>     vs.                         )<br>                             )<br>UNITED STATES OF AMERICA, )<br>                             )<br>           Respondent   ) | CIVIL CAUSE NO. 3:06-CV-207RM<br>(Criminal Cause No.<br>         3:04-CR-58(01)RM) |

OPINION AND ORDER

In June 2004, a grand jury indicted Exavier McCaster for distribution of cocaine base and possessing a firearm in furtherance of drug trafficking. He pleaded guilty and was detained pending a trial scheduled for September 27, 2004. On the Friday before trial, with his appointed counsel at his side, he pleaded guilty to both charges without benefit of a plea agreement. Sentencing was scheduled for December 28, 2004.

The sentencing was continued twice for brief periods without a motion by either party, then was continued to March 3, 2005 when Mr. McCaster retained Jeffrey Sanford to represent him. The sentencing hearing was continued twice more before proceeding on June 8, 2005.

During the presentence period, the government notified the probation officer and Mr. McCaster that it believed Mr. McCaster's offense level should be based on relevant conduct including distribution of 87 grams of crack cocaine. *See* U.S.S.G. § 1B1.3. The base offense level for offenders whose conduct involved between 50 and 150 grams of cocaine base is 32. U.S.S.G. § 2D1.1(c)(4). Mr. Sanford and the

government's attorney compromised on the drug amount involved in relevant conduct, stipulating to 43.5 grams. The base offense level for offenders whose conduct involved between 35 and 50 grams of cocaine base is 30. U.S.S.G. § 2D1.1(c)(4). The government notified the court of the parties' stipulation about a week before the sentencing.

At the sentencing hearing, the court adopted the presentence report without objection, as modified by the parties' stipulation on the drug quantity. The base offense level of 30 was reduced by 3 levels to reflect Mr. McCaster's acceptance of responsibility, with the government moving orally for the third level, U.S.S.G. § 3E1.1, and then was reduced by another 2 levels on the government's motion, producing a final adjusted offense level of 25. Mr. McCaster was assigned to criminal history category I, so the sentencing guidelines recommended a sentencing range of 57 to 71 months on count 1. Count 2 carried a mandatory consecutive 60-month sentence.

By the time of the sentencing hearing, Booker v. United States, 125 S. Ct. 738 (2005), already had taught that the sentencing guidelines were advisory. Nonetheless, because of earlier discussions between the government and the defense, both sides recommended a sentence at the low end of the range. The court agreed and imposed the sentence Mr. McCaster had requested — a sentence based on the drug quantity to which Mr. McCaster had stipulated.

At the close of the sentencing hearing, the court informed Mr. McCaster of his right to appeal and of the need for a notice of appeal to be filed within 10 days.

2

Mr. McCaster told the court that he wanted to appeal. After further discussion with Mr. Sanford, Mr. McCaster corrected himself: "I will not be appealing it." The court told Mr. McCaster that if he should change his mind, he should notify Mr. Sanford as soon as possible "because, again, there's a limited period of time in which to act."

Mr. McCaster now seeks relief under 28 U.S.C. § 2255, contending that he received ineffective assistance of counsel because Mr. Sanford did not object to the unreasonableness of the sentence, because his attorneys did not file a notice of appeal, and because his sentence was enhanced based on facts not found by a jury beyond a reasonable doubt. The court heard evidence and argument on September 7, 2006.

Two of Mr. McCaster's contentions can be disposed of with little comment. Mr. McCaster stipulated to the drug quantity on which his sentence was based (and the court treated the sentencing guidelines as advisory), and the court imposed the sentence Mr. McCaster asked for. His sentence was neither unconstitutionally calculated nor objectionable as unreasonable. Resolution of the issue of the notice of appeal requires considerable more discussion.

Recitation of the facts requires a credibility determination because the conflicts between the testimony of Mr. McCaster and the testimony of attorney Gregory Kauffman are irreconcilable. Mr. McCaster was not a credible witness at the evidentiary hearing. He was plainly determined to convey the message that he paid a lawyer to file a notice of appeal, the lawyer didn't file the notice of appeal,

3

and the lawyer kept the money. His eagerness led him to respond quickly with negative answers, then claim lack of memory when the question was asked again. He remembered the sentencing court telling him of the need to file a notice of appeal within ten days, but claimed an inability to remember anything else that was said at the hearing, though he grudgingly conceded the possibility that Mr. Sanford may have given him some advice when the topic arose. He claimed an inability to remember the name of an individual against whom he proposed to give information. He claimed an inability to remember how many times he spoke with the attorney he hired to replace Mr. Sanford.

Gregory Kauffman, the attorney Mr. McCaster hired after the sentencing hearing, was the only other witness to Mr. McCaster's post-sentencing hearing conversations about the notice of appeal. That Mr. Kauffman carefully prefaced most of his testimony with "I believe" — implying what might be a greater than usual lack of certainty — might be troubling in other evidentiary contexts, but Mr. Kauffman's testimony is the only credible evidence about what occurred between Mr. McCaster and Mr. Kauffman. The court credits Mr. Kauffman's testimony to the extent it conflicts with Mr. McCaster's.

Given that credibility finding, this is what happened after the court told Mr. McCaster that he should notify Mr. Sanford immediately if he changed his decision not to appeal:

Mr. McCaster never told Mr. Sanford that he wanted to appeal. Indeed, from the record at the evidentiary hearing, it doesn't appear that Mr. McCaster has

4

spoken to Mr. Sanford since the conclusion of the sentencing hearing. The record does not disclose Mr. McCaster's reasons for not contacting Mr. Sanford when he changed his mind.

Instead, about half-way through his ten-day window, Mr. McCaster contacted Mr. Kauffman by telephone about filing a notice of appeal. Mr. Kauffman agreed to look at the case. On June 14, Mr. McCaster's mother Ruth brought Mr. Kauffman a check for $1,000 to cover his services. Mrs. McCaster reports that she cashed in an insurance policy to acquire those funds. Mr. Kauffman told Mrs. McCaster he would take care of the case.

Mr. Kauffman called Mr. Sanford, who provided a copy of the court's sentencing memorandum and relayed his own view of the advisability of an appeal. Mr. Kauffman spoke with Mr. McCaster on the phone again and told Mr. McCaster that it appeared to him that since Mr. McCaster got the sentence he asked for, an appeal would be a waste of time or worse — it could result in a longer sentence. This was not the advice Mr. McCaster wanted to hear; he wanted an appeal. After further discussion, Mr. McCaster said he would let Mr. Kauffman handle it, and Mr. Kauffman said he would file the notice if it was advisable to do so, but that if Mr. Kauffman concluded it was just a waste of time, he would not file it.

Mr. Kauffman chose not to file the notice of appeal, believing instead that Mr. McCaster's best hope for a lower sentence lay in cooperation with state and federal prosecutors. He knew that such cooperation already had reduced Mr.

5

McCaster's sentence once, and Mr. McCaster had indicated he wanted to provide further cooperation. Mr. Kauffman spoke with Mr. McCaster on the phone again, and Mr. McCaster said he wanted to provide information on a murder case — specifically, the case against John Q. Lloyd, whom Mr. Kauffman represented in his capacity as a county public defender. Mr. Kauffman cannot ethically represent both a defendant and a person who wants to be a witness against that defendant, so he immediately halted the discussion. He told Mr. McCaster he had a conflict and could not represent him, and would arrange for another attorney to take over the case.

Mr. Kauffman did not testify that the conversation about Mr. Lloyd occurred after the deadline for the notice appeal passed, and wasn't sure when that conversation occurred, but the court is confident in its inference that the deadline already had passed. Mr. Kauffman testified credibly that one conversation was ended with the mutual agreement that Mr. Kauffman would file a notice of appeal only if it looked like a good idea. The next conversation related to cooperation. Mr. Kauffman testified that the focus on cooperation began after he had determined that a notice of appeal would be a bad idea.

Mr. Kauffman never entered an appearance for Mr. McCaster in the criminal case. He contacted attorney John Slaugh and referred the matter on to him. Mr. Kauffman and Mr. Slaugh agreed that Mr. Kauffman would keep $500 of the $1,000 Mrs. McCaster had paid, and Mr. Slaugh would receive the rest.

Mr. Slaugh had several phone conversations with Mr. McCaster and wrote

6

about six letters to and for him, some of the letters exceeding a page in length. Mr. Slaugh contacted the county prosecuting attorney's office's chief deputy about Mr. McCaster's assistance, and was told in a brief letter that Mr. McCaster had met with investigators, that his information was of little use, and that Mr. McCaster had been caught in several outright lies. The attorney-client relationship between Mr. McCaster and Mr. Slaugh ended when Mr. McCaster threatened to file a disciplinary complaint against Mr. Slaugh for not returning the money Mr. Slaugh had received from Ruth McCaster.

Other than wanting a refund — a matter the Constitution does not reach — Mr. McCaster has no real complaint about the conduct of either Mr. Sanford or Mr. Slaugh. After their in-court conference, Mr. McCaster told Mr. Sanford (and the court) that he would not be appealing, and he never told Mr. Sanford anything to the contrary. Mr. Sanford had no obligation of any sort to file a notice of appeal on Mr. McCaster's behalf. By the time Mr. Slaugh was brought into the case, the time for appeal had passed. Mr. Slaugh cannot be faulted for not filing a notice of appeal for a person he did not represent (indeed, a person he may not have known existed).

If any Constitutional harm befell Mr. McCaster, then, it must have been through Mr. Kauffman, who was hired to file a notice of appeal and did not do so. A habeas petitioner claiming ineffective assistance of counsel ordinarily must show that his attorney's performance fell below an objective standard of reasonableness, causing him prejudice. *See, e.g.,* Adams v. Bertrand, 453 F.3d

7

428, 434 (7th Cir. 2006). It would be difficult to fault Mr. Kauffman's advice (which was, of course, the same advice Mr. Sanford gave). Since the court gave Mr. McCaster precisely the sentence he requested — the low end of a recommended range that was based on a stipulated drug quantity — he would have virtually no chance of appellate success. But if he won, or if the government filed and won a cross-appeal, he would face a resentencing that might not include the stipulated lower drug quantity, a reduction for acceptance of responsibility, the government's motion from which he benefitted the first time around, and/or the government's recommendation for a sentence at the bottom of the recommended range. Were all of those things to occur, the sentencing guidelines would recommend an aggregate sentencing range of 181 to 211 months' imprisonment.

Failing to file a requested notice of appeal, though, is a different kind of ineffective assistance of counsel. "Where the record shows (or where the government cannot dispute) that a defendant makes a timely request to an attorney to appeal, the attorney's failure to file a timely notice of appeal constitutes per se ineffectiveness of counsel." United States v. McKenzie, 99 F.3d 813, 816 (7th Cir. 1996). In Castellanos v. United States, 26 F.3d 717, 718 (7th Cir. 1994), the court explained why this special type of ineffective assistance claim does not turn on the quality of the attorney's advice or that the only prejudice to the defendant is a loss of an appeal that would have been frivolous at best and counter-productive at worst: "If the defendant told his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective

8

assistance of counsel, but of *any* assistance of counsel on appeal. Abandonment is a *per se* violation of the sixth amendment."

The <u>Castellanos</u> court went on to explain that the attorney need not act simply as a scrivener, and may advise the defendant that an appeal would be foolish:

> "Request" is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue. ... If the defendant wants to take an imprudent appeal, the lawyer properly may try to talk him out of it. ... But if the defendant nonetheless insists on appealing, the lawyer must file the notice of appeal and represent his client earnestly unless relieved by the court of appeals.

*Id.* at 719. Thus, if a defendant wants to appeal despite all odds and logic, and tells the attorney of that decision, the attorney may not Constitutionally decline to do so because it is inadvisable. If that is what happened to Mr. McCaster, he is entitled to proceed with a belated appeal even if that appeal is thought to be doomed from the outset.

This record indicates, though, that that is not precisely what happened to Mr. McCaster. According to the only credible evidence before the court, Mr. McCaster and Mr. Kauffman discussed Mr. Kauffman's advice, with the final directive to Mr. Kauffman being to file a notice of appeal if doing so would be a good idea rather than a waste of time. There is a critical difference between a defendant telling an attorney, "I want to file an appeal" — which requires the attorney to do so if the request remains unchanged — and "I want to file an appeal if you think it would be a good idea" — which gives the attorney discretion on

9

whether to file. Mr. McCaster entrusted Mr. Kauffman with the decision. He has not shown that Mr. Kauffman made a poor decision or even failed to decide; he simply now wishes the decision had been different. *See* United States v. Arguijo, 2001 WL 99702, at *2 (N.D. Ill. 2001). It might have been better in the long run had the decision been communicated to Mr. McCaster at a time Mr. McCaster could still act if he changed his mind again, but neither the Constitution nor Mr. McCaster's instructions to his attorney required such a call.

Mr. McCaster was not denied counsel or of the effective assistance of counsel. For all of the reasons set forth in this opinion, the court DENIES his petition under 28 U.S.C. § 2255.

ENTERED:  September 13, 2006

                                         /s/ Robert L. Miller, Jr.
                                         Chief Judge
                                         United States District Court

cc:   E. McCaster
      J. Hamilton
      D. Schmid

11